UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELANSARA ROMANAC,

        Plaintiff,

v.                **DECISION AND ORDER**
                   10-CV-178S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

   1.  Plaintiff Elansara Romanac challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff applied for Social Security Income ("SSI") on April 28, 2006, alleging that he had been disabled since July 7, 1997, due to lower back pain, sleep apnea, high blood pressure, cardiac problems, breathing problems, and possible anxiety. Plaintiff contends that his impairments have rendered him unable to work. He therefore asserts that he is entitled to payment of disability benefits under the Act.

   2.  Plaintiff's application for benefits was denied on November 13, 2006. He thereafter requested an administrative hearing, which was held on two occasions before ALJ Eric L. Glazer on September 10, 2008 and on January 8, 2009, during which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on April 28, 2009, issued a decision denying Plaintiff's application for benefits. On February 12, 2010, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on March 4, 2010, challenging Defendant's final decision.[1]

---

[1] The ALJ's April 28, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On August 18, 2010, both the Government and Plaintiff filed Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of

Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

        9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since April 28, 2006, the date he applied for SSI (R. at 24);[2] (2) Plaintiff has severe impediments, specifically borderline intellectual functioning, a mild to moderate disc bulge or disc herniation at L5-S1, and a near full thickness tear of the anterior aspect of the right supraspinatus tendon (id.); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (id. at 26); (4) Plaintiff has the residual functional capacity to perform sedentary work, subject to the following limitations: he should avoid repetitive bending, reaching above shoulder level on the right hand side, concentrated, excessive exposure to humidity, dust, fumes, gases, smoke, and other respiratory irritants. Moreover, Plaintiff is limited to understanding, remembering, and carrying out simple instructions, and needs a supervisor to check his work twice a day. He can occasionally interact with the general public and be around fellow employees throughout the day, but only occasional conversation and interpersonal interaction can be required. (Id. at 30.) Finally, (5) considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id. at 40.) Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, since April 28, 2006, the date on which the

---

[2] Citations to the underlying administrative record are designated as "R."

application was filed. (Id. at 41.)

10.  Plaintiff's first challenge to the ALJ's decision is that he erred in failing to find that Plaintiff's condition meets or equals the listing at §12.05C. The Commissioner's regulations, found at 20 C.F.R. § 404, Subpart P, App. 1, describe "listed" impairments, which are those impairments deemed sufficient to satisfy "the irrebuttable presumption of disability." Shaw v. Carter, 221 F.3d 126, 132 (2d Cir. 2000). The "Listing" at §12.05 includes four definitions for mental retardation. Before qualifying under any of these definitions, a plaintiff must first show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22. 20 C.F.R. § 404, Subpart P, App. 1. Only once a plaintiff has made this showing, may he then attempt to satisfy one of the four sets of criteria listed in paragraphs A through D, demonstrating a sufficiently severe impairment.

Plaintiff maintains that the ALJ should have found him mentally retarded under Subsection C, which requires:

> (1) A valid verbal, performance, or full scale IQ of 60 through 70 and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

An individual who is found to meet these requirements is presumed disabled at step three without further inquiry. 20 C.F.R § 404.1520(a)(4)(iii). Plaintiff contends that he meets all the requirements of the § 12.05C test based on his IQ scores, and physical and mental impairments. He further maintains that his mental retardation existed before age 22.

11.  In October, 2008, Dr. Thomas Ryan, a consultative psychologist, administered the Wechsler Adult Intelligence Scale test to Plaintiff to determine his IQ. Based on his evaluation, Dr. Ryan concluded that Plaintiff has deficits on all verbal tasks

5

including vocabulary, comprehension, and similarities. His arithmetic skills were limited to one-step computations. (R. at 317.) Plaintiff had a verbal IQ of 70, performance IQ of 75, and a full scale IQ of 70. (Id.) According to § 12.00(D), "in cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided, we use the lowest of the three in conjunction with 12.05." 20 C.F.R. § 404, Subpart P, App. 1. IQ tests create a rebuttable presumption of a fairly constant IQ throughout a person's life. Santiago v. Astrue, No. 07-CV-6239, 2008 WL 2405728, *4 (W.D.N.Y. June 11, 2008) (citing Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001)) (finding that the plaintiff met the criteria for mental retardation despite not being IQ tested until after age 22). Absent evidence of a change in a plaintiff's intellectual functioning, it is appropriate to assume that the results of an IQ test administered after age 22 accurately reflects the plaintiff's IQ prior to age 22. Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (finding that plaintiff met the requirements for §12.05 despite not being tested until age 42). Thus, the ALJ was required to use Plaintiff's performance IQ score of 70 in determining whether he met listing 12.05C.

12.    The ALJ did not accept Plaintiff's IQ scores. The ALJ relied on the opinions in Vasquez-Ortiz, 48 F. Supp.2d at 257, and Rivera v. Apfel, No. 98-CV00619EF, 2000 WL 1568596 (W.D.N.Y. 2000) for the proposition that "there must be substantial evidence in the record to support that the claimant has significantly subaverage general intellectual functional with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." (R. at 27) (quotation marks omitted). The ALJ considered the consultant psychologist Dr. Ryan's report and Plaintiff's testimony to conclude that he possessed "the ability to perform more than minimum self-support without supervision, guidance and assistance" and did not qualify under § 12.05C. (Id. at 27.)

6

13. As a threshold matter, this Court notes that, although the ALJ considered adaptive functioning as part of his analysis, it appears that the ALJ considered this as part of § 12.05C, instead of more properly discussing it as part of that section's introductory paragraph. See Edwards v. Astrue, No. 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *4 (N.D.N.Y. Sep. 16, 2010) ("While the ALJ did not specifically address the introductory paragraph, the evidence of record permits the Court to glean the rationale for the ALJ's decision."). As already discussed, before considering whether a plaintiff meets the requirements of Listing 12.05(c), a plaintiff must show that he meets the requirements of the introductory paragraph. Id. at *3. This introductory paragraph requires that a plaintiff show that he suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age 22. 20 C.F.R. 404, Subpart P, App. 1. Beyond satisfying only the age component, a plaintiff must separately evidence deficits in adaptive functioning. Edwards, 2010 WL 3701776, at *3; Randall v. Astrue, 570 F.3d 651, 659 (5th Cir. 2009) (upholding ALJ's decision to construe 12.05 to require independent showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning and listing circuits holding same). "[D]eficits in adaptive functioning 'denotes an inability to cope with the challenges of ordinary everyday life.'" Carrube v. Astrue, No. 3:08-CV-0830 (FJS), 2009 WL 6527504, at *4 (N.D.N.Y. Dec. 2, 2009) (quoting Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007)). This includes consideration of "claimant's effectiveness in areas such as social skills, communication, and daily living skills." West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698 (6th Cir. 2007).

14. Here, substantial evidence supports the ALJ's determination that Plaintiff did not meet the definition laid out in the introductory paragraph. Although Plaintiff's

7

performance IQ score was 70, Dr. Ryan's report shows that Plaintiff was in the borderline range of intellectual functioning and had no significant limitations in following and understanding simple directions, maintaining his attention and concentrating, or maintaining a regular schedule. (Id. at 317.) He had moderate to significant limitation in his ability to learn new tasks, but was able to perform some complex tasks, and had only a mild limitation in his ability to make appropriate decisions. (Id.) Plaintiff was also capable of managing his own funds. (Id. at 318.)

These findings are supported by Plaintiff's lifestyle. Plaintiff spent time living by himself and with his girlfriend. While living alone, he cleaned, shopped, and washed laundry. (Id. at 100-02.) He socialized daily. (Id. at 103.) He was able to provide for his own medical care and follow physician's instructions. (Id. at 383-84.) Plaintiff was also able to enroll himself in school in order to better himself academically. (Id. at 400-01.) On the basis of these facts, there is substantial evidence to support the ALJ's determination that Plaintiff possessed a level of adaptive functioning incompatible with the description provided in § 12.05C's introductory paragraph.

15.     Even if Plaintiff did clear the introductory paragraph's threshold requirements, he would still need to meet the specific requirements of § 12.05C. See Edwards, 2010 WL 3701776, at *5. In this regard, the ALJ determined that Plaintiff's IQ score of 70 was inconsistent with the record. (Id. at 27.) Because he concluded that Plaintiff did not meet the first requirement of § 12.05C, the ALJ concluded that whether Plaintiff could show an additional impairment in satisfaction of the second requirement was moot. (Id.) Having concluded that the ALJ's findings as to the introductory paragraph are supported by substantial evidence, this Court does not reach the question of whether Plaintiff can meet the remaining requirements of § 12.05C.

16.     Plaintiff's only remaining challenge is that he also suffers from a combination of severe exertional and non-exertional limitations that would preclude him from sustaining full-time competitive employment on a regular and sustained basis pursuant to SSR 96-8p. Plaintiff does little to elaborate on this point, and appears to devote only a single sentence, which is itself subsumed under his primary argument, already discussed.  In any case, the ALJ's determination on this point is supported by substantial evidence.  The ALJ thoroughly discussed all available evidence before making an evidentiary weight analysis in which he concluded that claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible.  The ALJ noted that it was not until October 2008 that Plaintiff began to allege disability due to mild mental retardation, back problems, shoulder problems, and sleep apnea, despite these disabilities allegedly beginning on July 7, 1997.  (R. at 36.)  Moreover, the evidence did not conform to Plaintiff's testimony. Although he argued various physical limitations, these were not reflective of his lifestyle. In particular, he reported painting and clearing an apartment in 2006.  (Id.)  The ALJ also identified various other inconsistencies, including Plaintiff's ever-changing smoking habits (varying from 1 ½ to 4 packs per day depending on with whom he was speaking), his claims to have received special education despite claiming the opposite on his application forms, and inconsistent statements about the efficacy of his physical therapy.  (See id. at 37-38.) Without further reviewing ALJ Glazer's well-reasoned and extensively documented opinion, this Court concludes that the ALJ did not err on this point.

17.     After carefully examining the administrative record, this Court finds that the ALJ sufficiently developed the record.  Furthermore, this Court finds that substantial evidence supports the ALJ's decision in this case, including the State agency physician's medical opinions and Plaintiff's testimony.  This Court is satisfied that the ALJ thoroughly

examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 4) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:   December 19, 2011
        Buffalo, New York


                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                 Chief Judge
                                          United States District Court